IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TED M. WILLIAMS, )
      Plaintiff, )
)
v. ) 2:10-CV-1263
)
COMMISSIONER OF )
SOCIAL SECURITY, )
      Defendant. )

REPORT AND RECOMMENDATION

I. Recommendation

It is respectfully recommended that the plaintiff's motion for summary judgment (Docket No.10) be denied; that the defendant's motion for summary judgment (Docket No. 13) be granted, and that the decision of the Commissioner be affirmed.

II. Report

Presently before the Court for disposition are cross motions for summary judgment.

On September 30, 2010, Ted M. Williams, by his counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g) for review of the Commissioner's final determination disallowing his claim for Supplemental Security Income benefits under Sections 1614 and 1631 of the Act, as amended, 42 U.S.C. §1381 cf.

The instant application for Supplemental Security Income Benefits was filed on December 22, 2005 (R.65-67) and benefits were denied. On October 27, 2006, the plaintiff requested a hearing (R.46) and pursuant to that request a hearing was held on January 2, 2008

(R.433-465). In a decision filed on April 23, 2008, an Administrative Law Judge denied benefits (R.14-26), and on July 28, 2008, the plaintiff requested reconsideration of that determination (R.10-13). On April 8, 2010, the Appeals Council affirmed the prior determination (R.7-9). The instant complaint was filed on September 30, 2010.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his/her burden of demonstrating that he/she was disabled within the meaning of the Social Security Act. Richardson v. Perales, 402 U.S. 389 (1971); Adorno v. Shalala, 40 F.3d 43 (3d Cir. 1994).

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Johnson v. Comm'r. 529 F.3d 198 (3d Cir.2008). The court may not set aside a decision supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358 (3d Cir.1999)

The purpose of the Supplemental Security Income Program is to provide additional income to persons of limited resources who are aged, blind or disabled persons. 42 U.S.C. §1381; Chalmers v. Shalala, 23 F. 3d 752 (3d Cir. 1994). To be eligible for such benefits, an individual's income must not exceed a certain established maximum and he/she must fulfill certain eligibility requirements.

As set forth in 20 C.F.R. § 416.905(a), disability is defined as:

> the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.
>
> In addition, a person will be considered disabled if he/she is
>
> (a) ... permanently and totally disabled as defined under a State plan approved under title XIV or XVI of the Social Security Act, as in effect for October 1972; (b) ... received aid under the State plan ... for the month of December 1973 and for at least one month prior to July 1973; and (c) ... continue[s] to be disabled as defined under the State plan.

20 C.F.R. § 416.907.

A physical or mental impairment is defined in 20 C.F.R. §416.908 as an:

> impairment [which] result[s] from anatomical, physiological, or psychological abnormalities which [are demonstrated] by medically acceptable clinical and laboratory diagnostic techniques.

For purposes of determining whether or not the plaintiff met the eligibility requirements, certain evidence was considered by the Commissioner.

At the hearing held on January 2, 2008, the plaintiff appeared with counsel (R.435) and testified that he was born on April 5, 1959 (R.437); that he completed the tenth grade (R.437); that he worked as a heavy laborer from 1989 through 1992 and that prior to that time he worked as a bricklayer (R.437, 450-451).

The plaintiff also testified that he had experienced back problems since a 1992 work related injury (R.438); that he takes medication for depression, psoriasis, stomach problems and high blood pressure (R.442-444, 453); that he no longer drinks alcohol (R.443); that he

3

suffers from fatigue (R.443); that he generally sleeps, watches television and takes walks (R.444, 458); that he can walk about one block (R.448); that he is being treated for hepatitis C (R.450-451); that he was hospitalized for depression for three days (R.454), and that he attends group therapy (R.452).

At the hearing a vocational expert was called upon to testify (R.462-463). The witness classified the plaintiff's prior work as heavy and unskilled (R.463). When asked to assume an individual of the claimant's age, education, and work experience with the capacity to perform sedentary work, the witness responded that there were a large number of jobs such a person could perform (R.463). However, the witness also testified that if the individual had to avoid paced work, he would not be employable (R.464).

In addition, certain other evidence was considered.

The plaintiff was treated by Dr. K.C. Davides between February 27, 2004 and October 13, 2005 for prostatitis (R.109-114).

The plaintiff was treated at the University of Pittsburgh Medical Center between January 6, 2004 and January 31, 2006 for hepatitis C, depression, chest, back and knee pain, shortness of breath, arthritis, hypertension, alcohol and tobacco abuse, benign prostatic hypertrophy and psoriasis. Medication was prescribed (R.135-207).

The plaintiff was treated by Dr. Sudhir K. Naria in June, 2006 for diverticulosis, hemorrhoids and gastric retention. Medication was recommended (R.208-212).

The plaintiff was treated at the University of Pittsburgh Medical Center between January 31, 2006 and June 16, 2006 for hypertension, osteoarthritis and psoriasis. The plaintiff refused to participate in physical therapy (R.213-228).

The plaintiff was treated at the University of Pittsburgh Medical Center between February 10, 2006 and August 3, 2006 for diarrhea, abdominal pain, hyponatremia and mild gastritis (R.229-250).

The plaintiff was treated by Dr. Michael A. Tranovich between June 1, 2006 and August 15, 2006 for hip and shoulder pain, bilateral tronchanteric bursitis and tendinitis. Anti-inflammatory injections were administered. The plaintiff also had a foreign body removed from his left foot (R.251-262).

In a residual functional capacity evaluation completed on September 7, 2006, it is noted that the plaintiff could occasionally and frequently lift up to ten pounds, stand or walk for at least two hours and sit for about six hours (R.263-269).

In a report of a psychiatric review completed on September 12, 2006, Michelle Santilli, Psy.D., noted an affective disorder with depression and an anxiety related disorder which were controlled. The severity was said to fail to meet the severity required for a showing of disability, and any limitations were noted as being insignificant to moderately limiting (R.270-285).

The plaintiff was treated at the Mon Yough Community Services, Inc. between August 28, 2006 and February 16, 2007 for depression which was controlled (R.286-301).

The plaintiff was treated by Dr. Lawrence M. Stokar between September 9, 2004 and March 27, 2007 for dermatological matters (R.115-126, 321-389).

The plaintiff was treated at the McKeesport Hospital between June 1, 2006 and September 16, 2007 for suicidal and homicidal thoughts for which he underwent a voluntary

commitment. Mild disc disease, alcoholic intoxication and alcoholic gastritis were also noted (R.390-432).

>Based on the evidence presented, the Commissioner determined:
>
>The claimant has not engaged in substantial gainful activity since October 28, 2005.
>
>The claimant has the following severe impairments: degenerative disc disease in the lumbosacral spine, gouty arthritis, history of hepatitis C, and bipolar affective disorder...
>
>The claimant has evidence of degenerative disc disease on diagnostic imaging... and he evidently had back surgery in 1994; but physical examination in April 2004 showed normal range of motion in the low back and a negative straight leg raising sign. He is neurologically intact. Low back pain has not been a focus of treatment over the past several years. Certainly he does not display signs of radiculopathy or pseudoclaudication that might suggest a Listing-level back disorder. The claimant's liver function has been compromised but with treatment it has not met or exceeded the criteria of Listing 5.05. His gouty arthritis is intermittent and does not produce findings sufficient to satisfy the listing for inflammatory arthritis, 14.09. He is able to ambulate independently and effectively. His treating source has indicated that his gouty arthritis is stable on allopurinol treatment, and blood studies show no persistent elevation of serum uric acid.
>
>As for the claimant's depressive disorder, I have considered the four broad functional categories contained in Listing 12.04, paragraph B. The first functional area is activities of daily living. In this area, the claimant has no limitation. The record shows that he has had difficulty with an ex-paramour regarding visitation with and custody of some of his eight children, but this is an external factor that does not denote inability to be more active. Similarly, the claimant testified that he has little motivation and energy, but he does go to church occasionally, cares for his personal needs independently, uses public transportation, helps with meal preparation, and watches television. He has indicated that he could be more active in all these areas if it were not for his physical pain; certainly nothing in the record shows that his activities of daily living have been significantly restricted as the direct result of a medically determinable mental impairment.

The next functional areas is social functioning. In this area, the claimant has no more than mild limitation. He indicated that he does not like to be criticized and that he tends to argue and get "frustrated with ignorant people." He said he is paranoid (but his colloquial use of this term to describe a tendency to be fearful or distrustful of other people does not constitute a clinical finding of actual, medically verifiable paranoia). His testimony and written allegations that he cannot get along with other people simply cannot be squared with the fact that he has been living in the same household with a girlfriend and several of his children, has been able to get along appropriately with the staff of multiple medical providers, and communicates clearly. He has no[] thoughts of hurting himself or others. It may be that he prefers not to tolerate other people, but the evidence hardly suggests that he cannot.

The third functional area is concentration, persistence or pace. In this area, the claimant has no limitation...

The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of decompensation.

In short, the claimant has no mental impairment that meets Listing 12.04B. I also do not find evidence even remotely suggesting that the claimant has a mental disorder severe enough to satisfy the so-called "C" criteria under 12.04...

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work... He cannot work in close coordination with others or ... interact at all with the general public.

* * *

[H]is history of employment has been so scattered and sparse that it cannot be presumed that he would be working now but for the effects of his various medical conditions...

In terms of the claimant's alleged fibromyalgia, the Administrative Law Judge notes that this diagnosis was apparently made on the basis of generalized body aches that could not be explained by solid abnormal clinical findings...

> The remaining physical disorder that could be expected to cause symptoms and limitations is hepatitis C ... his treating hepatologist reported that he had been non-compliant with treatment in the past. He had an adverse reaction to interferon on one occasion, but treatment was scheduled to be resumed... The record does not show that the disease is now active, and the claimant apparently has elected not to undergo the prescribed treatment... the last clinical report in connection with hepatitis, shows that the claimant did not demonstrate jaundice, abdominal tenderness, ascites, hepatomegaly, masses, or asterixis - in other words, there was no clinical evidence of active liver disease.
>
> * * *
>
> Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> * * *
>
> The claimant has not been under a disability... since ... the date the application was filed.(R.19-26).

As the Commissioner observed, the record demonstrates that the plaintiff experiences a number of infirmities, namely degenerative disc disease, gouty arthritis, hepatitis C, fibromyalgia and a bipolar affective disorder. While he does experience some discomfort from the physical ailments, none have been demonstrated to be of any great consequence and the plaintiff has failed to be compliant with the recommended treatment. Rather, as the Commissioner noted, his poor and very limited work history in no way supports a conclusion that he is unable to work due to these ailments. In addition, while he does suffer from depression, it appears to be controlled and not interfere with his normal daily activities. Thus, the conclusion that the plaintiff is able to engage in a wide range of sedentary work activity, and for this reason is not disabled, is supported by substantial evidence.

Summary judgment is appropriate where there are no material factual issues in dispute and the movant is entitled to judgment as a matter of law. Azur v. Chase, 601 F.3d 212 (3d Cir. 2010). In the instant case there are no material issues of fact in dispute, and the findings of the Commissioner are supported by substantial evidence. For this reason, it is recommended that the plaintiff's motion for summary judgment be denied; that defendant's motion for summary judgment be granted, and that the decision of the Commissioner be affirmed.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections within fourteen (14) days of this date. Failure to do so will waive the right to appeal.

Respectfully submitted,

s/Robert C. Mitchell,
United States Magistrate Judge

Entered: May 11, 2011