IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TED M. WILLIAMS, | ) |
| Plaintiff, | ) |
| vs. | ) Civil Action No. 10-1263 |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

O R D E R

AND NOW, this 21st day of November, 2011, upon consideration of "Plaintiff's Counsel's Petition for Attorney Fees under the Equal Access to Justice Act" (Document No. 19) filed in the above-captioned matter on September 9, 2011, and upon further consideration of Defendant's Response thereto (Document No. 20) and Plaintiff's Counsel's Reply to Defendant's Response (Document No. 24),

IT IS HEREBY ORDERED that said Motion is GRANTED in part, to the extent that Plaintiff, Ted M. Williams, is awarded attorney fees under the EAJA in the amount of $4,200.00. These attorney fees will be paid directly to plaintiff, Ted M. Williams, and sent to the business address of Plaintiff's counsel. Full or partial remittance of the awarded attorney fees will be contingent upon a determination by the Government that Plaintiff owes no qualifying,

1

pre-existing debt(s) to the Government. If such a debt(s) exists, the Government will reduce the awarded attorney fees in this Order to the extent necessary to satisfy such debt(s).

Plaintiff's counsel seeks fees under the Equal Access to Justice Act, 28 § U.S.C. 2412(d) ("EAJA") in connection with the above-captioned Social Security matter litigated before this Court. She represented Plaintiff in this matter, an appeal from the determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for supplemental security income benefits. A Report and Recommendation of the United States Magistrate Judge (Document No. 15) was issued, recommending that the Commissioner's decision be affirmed. However, this Court did not adopt the ultimate conclusions of the Report, but rather, pursuant to a August 16, 2011 Order, found that substantial evidence did not support the decision of the Administrative Law Judge ("ALJ") in this case. Accordingly, the case was remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of the Court's Order.

Counsel now seeks fees in the amount of $5,775.00 based on 33 hours of work spent on this case before this Court and the Magistrate Judge. Defendant opposes counsel's request, arguing that its position in opposing Plaintiff's appeal of the Commissioner's denial of benefits was substantially justified. In the alternative, Defendant argues that, even if fees under the

EAJA are warranted, the fees sought by Plaintiff's counsel are excessive. The Court disagrees with Defendant's first argument and finds that its position was not substantially justified, but agrees that the amount of fees sought is excessive.

Pursuant to the EAJA, "a court shall award to a prevailing party...fees and other expenses...incurred by that party...unless the court finds that the position of the United States was substantially justified or that special conditions make an award unjust." 28 U.S.C. § 2412(d)(1)(A). This means that fees can be ordered under the EAJA unless the government's position "has a reasonable basis in both law and fact." Williams v. Astrue, 600 F.3d 299, 302 (3d Cir. 2009) (quoting Hanover Potato Prods., Inc. v. Shalala, 989 F.2d 123, 128 (3d Cir. 1993)). It is Defendant's burden to establish that its position: (1) had a reasonable basis in truth for the facts alleged; (2) had a reasonable basis in law for the theory propounded; and (3) had a reasonable connection between the facts alleged and the legal theory advanced. See id.

However, "a court cannot assume that the government's position was not substantially justified simply because the government lost on the merits." Id. (quoting Morgan v. Perry, 142 F.3d 670, 685 (3d Cir. 1998)). Indeed, "a party's success on a single claim will rarely be dispositive of whether the government's overall position was substantially justified." Id. The Court must look at the totality of the circumstances in making

3

its decision. See id. (citing Roanoke River Basin Assoc. v. Hudson, 991 F.2d 132, 139 (4th Cir. 1993)).

Here, Defendant argues that it was justified in opposing Plaintiff's appeal because of the unsettled nature of the law regarding the effect of Global Assessment of Functioning ("GAF") scores on the determination of disability. To be sure, this Court acknowledges that GAF scores are a grey area of the law regarding disability. GAF scores do not directly correlate to a determination of whether an individual is or is not disabled under the Act:

> The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in our mental disorders listings.

65 Fed. Reg. 50746, 50764-65. While under certain circumstances a GAF score can be considered evidence of disability, standing alone, a GAF score does not evidence an impairment seriously interfering with a claimant's ability to work. See Lopez v. Barnhart, 78 Fed. Appx. 675, 678 (10th Cir. 2003). GAF scores may indicate problems that do not necessarily relate to the ability to hold a job. See id.; Zachary v. Barnhart, 94 Fed. Appx. 817, 819 (10th Cir. 2004); Wilkins v. Barnhart, 69 Fed. Appx. 775, 780 (7th Cir. 2003); Howard v. Commissioner of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002); Power v. Astrue, 2009 WL 578478, at *8 (W.D. Pa. Mar. 5, 2009). Nonetheless, a GAF score is evidence that an ALJ

4

should consider in determining a claimant's impairments and limitations in setting forth the claimant's residual functional capacity ("RFC") and in fashioning a hypothetical question to the vocational expert ("VE"). See Irizarry v. Barnhart, 233 Fed. Appx. 189 (3d Cir. 2007).

However, Defendant's argument focuses too much on whether it propounded a viable legal theory and not enough on the application of law to fact. It is important to understand how the issue was raised in the context of this case. Plaintiff, in his briefs in support of his summary judgment motion, argued that the failure to discuss the GAF scores assigned by Omar Bhutta, M.D., his treating psychologist, in light of the ALJ's decision to reject Dr. Bhutta's opinions regarding his work limitations, required the case to be remanded for further consideration. As this Court explained in its August 16 Order, the ALJ could not rely on Dr. Bhutta's daily reports in rejecting his opinion, yet fail to discuss GAF scores contained in those reports that may or may not support such reliance.

This is not a case, therefore, where a claimant was arguing that a low GAF score demonstrated disability. Rather, Plaintiff's argument was that GAF scores contained in reports used to reject a treating physician's opinion had to be discussed, and that the case had to be remanded for the ALJ to provide such discussion. While Defendant is correct that the law regarding the impact of

GAF scores is a bit ambiguous in the abstract, compare Irizarry, 233 Fed. Appx. at 192 with Gilroy v. Astrue, 351 Fed. Appx. 714 (3d Cir. 2009), applying the facts of this case demonstrates that the real issue here is not GAF scores in particular, but rather the failure to discuss relevant medical evidence generally. It is black letter law that where there is conflicting evidence in the record, the ALJ must explain which evidence he accepts and rejects and the reasons for his determination. See Cruz v. Commissioner of Soc. Sec., 244 Fed. Appx. 475, 479 (3d Cir. 2007) (citing Hargenrader v. Califano, 575 F.2d 434, 437 (3d Cir. 1978)). See also Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001). Therefore, regardless of whether the GAF scores themselves supported a claim of disability, the failure to discuss them in the context of this case constituted a failure to properly reconcile conflicting medical evidence.

The cases upon which Defendant relies demonstrate this difference. In Gilroy, for instance, remand was not required where the ALJ did not reference GAF scores assigned by the treating psychiatrist where the psychiatrist did not express any opinions regarding the claimant's occupational limitations. Here, Dr. Bhutta did opine on Plaintiff's limitations, and the GAF scores that arguably supported this opinion were grouped with other information in reports actually used to reject that opinion. Gilroy, unlike this case, did not raise the issue of potentially

6

conflicting evidence.

The failure to resolve the conflict in this case was particularly problematic in light of the fact that Dr. Bhutta was a treating medical professional. It is axiomatic that the opinion of a claimant's treating physician is to be afforded significant weight. See Fargnoli, 247 F.3d at 43; Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citing 20 C.F.R. § 404.1527). The regulations provide that a treating physician's opinion is to be given "controlling weight" so long as the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.927(d)(2); Fargnoli, 247 F.3d at 43; Plummer, 186 F.3d at 429. In light of the importance of the treating physician's opinion under Social Security law, and in light of the reliance of the ALJ on reports containing the GAF scores at issue, Defendant was not substantially justified in opposing a remand for further discussion. This was not merely the Commissioner arguing against a finding of disability, it was the Commissioner arguing against further development of the record on a crucial point.

Accordingly, the Court finds that Defendant's opposition to remand was not substantially justified, and that an award of fees pursuant to the EAJA is warranted. However, as stated above, the Court finds that the amount of fees sought by Plaintiff is

unreasonable. As both parties acknowledge, the Court must determine that the fees sought under the EAJA are reasonable and may adjust the award accordingly. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Commissioner, I.N.S. v. Jean, 496 U.S. 154, 161 (1990); Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).

As Defendant points out, a significant part of Plaintiff's primary brief contains legal analysis copied from earlier briefs filed by this attorney. While this was by no means inappropriate, it does demonstrate that the amount of time claimed to have been spent preparing a brief containing large sections that were simply copied from other briefs is unreasonable. See Ongay v. Astrue, 2011 WL 2457692 (D. Del. June 20, 2011) (reducing an award of attorney fees under the EAJA for use of boilerplate language copied from prior briefs). Not only does it show that much of the work had already been done, it also shows that the issues were not in any way novel or complex. Likewise, counsel spent 4 hours preparing objections to the Report and Recommendation of the Magistrate Judge that, for the most part, simply reiterated arguments made in the primary brief.

Therefore, the Court will reduce counsel's hours by 9 hours to account for the unreasonable time periods spent on briefing in what was a straight-forward, uncomplicated matter. Seven and a half hours of this reduction is to the time spent on the primary

8

brief, and the remaining hour and a half reduction is in regard to the objections to the Report and Recommendation. As such, the Court will order a payment under the EAJA for 24 hours of work, for a total of $4,200.00.[1]

                                        s/Alan N. Bloch
                                        United States District Judge

ecf:      Counsel of record

---

[1] The Court notes that Defendant does not challenge Plaintiff's requested hourly rate of $175.00. Section 2412(d)(2)(A) provides that attorney fees shall not be awarded in excess of $125.00 per hour unless the Court determines that a cost of living adjustment should apply or that a special factor justifies a higher fee. Applying the consumer price index shows that a rate of $175.00 per hour appears to be reasonable. See Garcia v. Schweiker, 829 F.2d 396, 401 (3d Cir. 1987) (holding that the consumer price index may be used to determine cost of living adjustments under the EAJA).